Gabriel Elias, Norchester Corporation and Bella Angel, Appellants, v. Environmental Hearing Board of the Commonwealth of Pennsylvania, Appellee, and Department of Environmental Resources, Intervening Appellee.

490

Argued September 6, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Joseph Michael Smith*, with him *F. Emmett Fitzpatrick, Jr.*, and *Fitzpatrick & Smith*, for appellants.

*Harriet N. Katz*, with her *R. Timothy Weston*, for intervening appellee.

OPINION BY JUDGE ROGERS, November 21, 1973:

Bella Angel and Norchester Corporation, a Pennsylvania business corporation, is each the record owner of an undivided one-half interest in a tenement known

as Warminster Heights in Warminster Township, Bucks County. Bella Angel is the mother of one Gabriel Elias. Gabriel Elias controls Norchester Corporation as well as several other out-of-state corporations which furnish management and certain utility services to Warminster Heights. Gabriel Elias is, in fact, the real owner of Warminster Heights and its manager.

Warminster Heights is a 140 acre tract of land on which are located 158 masonry and 113 frame buildings containing about 1200 dwelling units. It was constructed by the United States Government in 1943 to provide housing for servicemen and their dependents stationed at the Johnsville Naval Air Test Center. In an apparent fit of economy and poor judgment, the United States Government sold Warminster Heights to Gabriel Elias in 1957. Since that time Elias has rented the dwelling units. In 1971, 1107 units were occupied by about 6000 persons, all of whom are poor and many of whom live on public welfare.

Simply stated, Warminster Heights is and has been a notorious slum. It has remained such despite the efforts of the Warminster Township health authorities, the Bucks County Board of Health, and the former Department of Health and the present Department of Environmental Resources of the Commonwealth.

The present litigation was commenced by the issuance by the Department of Environmental Resources of an order requiring the appellants, Gabriel Elias, Norchester Corporation and Bella Angel to correct the unhealthful and dangerous conditions at Warminster Heights. The appellants appealed the order to the Environmental Hearing Board which conducted 13 days of hearings, producing a record of more than 2000 pages of testimony and 152 exhibits. The Environmental Hearing Board entered a 117 page adjudication and lengthy order, which Elias, Bella Angel and Norchester appealed to this court. We allowed intervention by the

Department of Environmental Resources and by certain tenants of Warminster Heights.

We will not dwell on the conditions at Warminster Heights. The record establishes massive, continuing and serious violations of the Warminster Township Housing Code, the Bucks County Health Department regulations, and the rules and regulations of the Department of Environmental Resources. These include defective wiring, defective heating systems, inoperable toilets, rotted floors, porches, walls, roofs, and window frames, accumulations of waste, rubbish and stagnant surface waters, and mosquito, vermin and rat infestation. Indeed, the appellants do not seriously contest the Board's findings with regard to these conditions. Their brief declares that "appellant is not contending that many of the conditions noted and enumerated at length in the adjudication do not exist on his premises."

The appellants present for our consideration three questions, two of which will not delay us long. One is, that the Department of Environmental Resources has no power to declare the existence at Warminster Heights of a nuisance but that under the law such a determination may be made only by a court. The Department's power is found in The Administrative Code of 1929, §§1917-A and 1919-A, Act of April 9, 1929, P. L. 177, added December 3, 1970, P. L. 834, §20, 71 P.S. §510-17 and §510-19, as follows:

Section 1917-A

"The Department of Environmental Resources shall have the power and its duty shall be:

"(1) To protect the people of this Commonwealth from unsanitary conditions and other nuisances, including any condition which is declared to be a nuisance by any law administered by the department;

"(2) To cause examination to be made of nuisances, or questions affecting the security of life and health, in any locality, and, for that purpose, without

fee or hindrance, to enter, examine and survey all grounds, vehicles, apartments, buildings, and places, within the Commonwealth, and all persons, authorized by the department to enter, examine and survey such grounds, vehicles, apartments, buildings and places, shall have the powers and authority conferred by law upon constables;

"(3) To order such nuisances including those detrimental to the public health to be abated and removed;

"(4) If the owner or occupant of any premises, whereon any such nuisance fails to comply with any order of the department for the abatement or removal thereof, to enter upon the premises, to which such order relates, and abate or remove such nuisance;

"(5) For the purpose of collecting or recovering the expense of the abatement or removal of a nuisance, to file a claim, or maintain an action, in such manner as may now or hereafter be provided by law, against the owner or occupant of the premises upon or from which such nuisance shall have been abated or removed by the department;

"(6) In making examinations as authorized by this section, the Department of Environmental Resources shall cooperate with the Department of Health, for the purpose of avoiding any duplication of inspection or overlapping of functions."

Section 1919-A

"The Department of Environmental Resources shall have the power, and its duty shall be, to investigate the sanitary condition of tenements, lodging and boarding houses, and, when the same are found to be a menace to those occupying the same, or employed therein, or to be overcrowded, to condemn the same, in such manner and subject to such limitations as may now or hereafter be provided by law, and to notify the owners or agents thereof, in writing, setting forth the unsani-

tary or overcrowded condition thereof, specifying the changes or alterations which shall be made thereto for the purpose of relieving such conditions, and further specifying the time within such changes or alterations shall be completed or overcrowding relieved: Provided, That in making inspections as authorized by this section, the Department of Environmental Resources shall cooperate with the Department of Labor and Industry, for the purpose of avoiding any duplication of inspection or overlapping of functions.

"For the purpose of making investigations authorized by this section, the officers and agents of the department shall, at all times, have the right of ingress into all tenement, lodging, and boarding houses." Section 1917-A expressly empowers the Department to protect the people of the Commonwealth from unsanitary conditions and nuisances by ordering their abatement or removal. With reference to housing, Section 1919-A authorizes the Department to condemn unsanitary tenements and order changes or alterations in their condition. That a department of state government may determine that a nuisance exists and order its abatement was the holding of *Lutz v. Department of Health*, 304 Pa. 572, 156 A. 235 (1931).

The appellants' second and even less meritorious legal argument is that they were denied due process of law because Gabriel Elias' testimony tending to excuse or minimize the unhealthful conditions at Warminster Heights was found by the Environmental Hearing Board to be lacking in creditability.

The appellants' third objection to the adjudication is addressed to the Board's order. The Board required the appellants to enter into contracts with third persons, described as "commercial contractors," approved by the Department, to exterminate rats and vermin, and to do carpentry, electrical, plumbing, painting and general contracting work effective to relieve the un-

healthful conditions at Warminster Heights. The appellants contend that the Board has no power to order it to contract with others. They further object to provisions of the order restraining them from evicting tenants (except for nonpayment of current rent), from increasing rents and requiring them to pay the removal expenses and the rent differential for tenants whose units cannot be restored. The Department makes no defense to these parts of its order except on the grounds of expediency. It contends that the experience of the township and county health authorities proves that the appellants will themselves do nothing at Warminster Heights, that threats of criminal prosecution and, indeed convictions for violating local health regulations, have not induced the appellants to improve conditions at Warminster Heights and that the employment of third persons by the appellants is necessary if anything is to be accomplished. The department defends its order with reference to the tenancies on the ground that there is a lack of low income housing in the area of Warminster Township and the tenants' need for protection against mass evictions. These may be compelling reasons for the Legislature to grant wider powers to the Department or to some other agency of state government. They are not, however, present legal authority for the order.

We find nothing in the cited sections of the Administrative Code which by the broadest implication suggest that the Department should have the power to require a person committing a nuisance to contract with others for its abatement, or that the Department should have the power to examine and approve such contracts, or that the Department may alter the general landlord and tenant law of Pennsylvania. However bold and imaginative these actions on the part of the Board are, they are without legal support. The law of Pennsylvania is: "The power and authority to be exercised by

administrative commissions must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined." *Green et al. v. Milk Control Commission*, 340 Pa. 1, 3, 16 A. 2d 9 (1949), *cert. denied*, 312 U.S. 708, 61 S. Ct. 826, 85 L. Ed. 1140.

The Environmental Hearing Board's adjudication has been appealed to us pursuant to the Administrative Agency Law, Section 44 of which gives us the power to modify. Act of June 4, 1945, P. L. 1388, 71 P.S. §1710.-44. This we have done, as follows:

ORDER

And now, to wit, this 21st day of November, 1973, it is ordered, adjudged and decreed that the order accompanying the adjudication of the Environmental Hearing Board be and it is hereby modified to read as follows, and, as so modified, is affirmed:

"The appellants are hereby ordered to do and perform the following things.

"(1) Eliminate rodents and vermin on the premises of Warminster Heights.

"(2) Remove all rubbish, trash and garbage from the de facto shared or common areas, including all streets, fields, vacant dwellings and all areas not within the curtilage of any tenant of Warminster Heights and provide for weekly removal thereafter so long as there are tenants occupying any dwelling in Warminster Heights. Within thirty (30) days of the date of this Order, furnish the Department with a plan for removal of trash, garbage and rubbish from common or shared areas, which plan shall include:

"(a) Removal schedules for specific areas, including streams.

"(b) Equipment to be used.

"(c) Specification of personnel to be used, time to be allocated and all other resources to be utilized.

"(d) Application to the Department of Environmental Resources for a Solid Waste Disposal Permit.

"(3) Within ninety (90) days of the date of this Order, submit to the Department and this Board a certification of an electrical inspection agency, approved by the Department of Environmental Resources, that every electrical fixture or facility, whether or not specifically mentioned, has been inspected and is in compliance with the National Electrical Code applicable at the time of installation. Thereafter, submit such a certification to the Department each six (6) months.

"(4) Do the following carpentry work:

"(a) Repair and/or replace all missing sash.

"(b) Repair and/or replace all broken or loose windowpanes.

"(c) Insure that all windows are operable, that none are nailed shut, and are capable of closing completely.

"(d) Make all windows weathertight.

"(e) Replace all sash and frames where windows cannot otherwise satisfy requirements of (a)-(d) above.

"(f) Report in writing to the Department of Environmental Resources and this Board the steps taken in compliance with this paragraph every thirty (30) days from the date of this Order until completion of the project.

"(5) Do the following heating work:

"(a) Vent all gas appliances.

"(b) Provide adequate sealing between smoke pipes and flues.

"(c) Clean deposits which interfere with venting.

"(d) Repair or replace non-operative blowers where applicable and making all heating units operative.

"(e) Repair or replace missing or broken doors on all hot water heater fire chambers.

"(f) Properly insulate combustion chambers.

"(g) Repair leaks in all gas and fuel oil lines and correct any other hazardous conditions, including precautions against breakage in accordance with standard practice. Each fuel supply line shall include a shut-off valve located on the exterior of the dwelling served.

"(h) Render all heating units reasonably capable of safety and adequately heating all habitable rooms including bathrooms and water closets to a temperature of at least 70° at a location three feet above floor level where the outside temperature is ten (10°) degrees Fahrenheit.

"(i) Place fire resistant material on the surface under the firebox of every heating unit.

"(j) All new heating units shall be in compliance with the Warminster Township Building Code (Ordinance No. 210).

"(6)  Do the following sewer work:

"(a) Inspect and clean all sewer manholes, to prevent clogging and overflows.

"(b) Inspect and clean all storm sewer systems to prevent stoppages, flooding and the creation of pools of unsanitary and mosquito-breeding water.

"(c) Within ninety (90) days submit a pollution incident prevention plan to the Department outlining steps to be taken to prevent pollution to the waters of the Commonwealh.

"(7)  Do the following masonry and general contract work:

"(a) Replace and/or repair all foundations, including footers, blocks, grouting of cracks and crevices, filling and sealing of holes.

"(b) Replace and/or repair all broken or cracked chimneys and flue liners.

"(c) Replace and/or repair all missing and broken shingles, siding, or block on exterior walls.

"(d) Replace and/or repair all broken, rotten and unsound wooden steps and deteriorated or missing cement steps.

"(e) Replace and/or repair all unsound, broken or sagging ceilings.

"(f) Repair and/or replace all severely worn and hazardous flooring or flooring which is seriously rotted or deteriorated.

"(g) Remove and replace porous kitchen and bathroom floor surfaces with materials impervious to water and which permit the floor to be easily kept in clean and sanitary condition.

"(h) Repair and replace all gutters and downspouts in order to channel all rainwater runoff in all dwellings where such fixtures are now missing, inadequate or deteriorated.

"(i) Replace or repair all roofs and fascia which leak and repair and close all cracks or holes; repair or replace any deteriorated roof supports or fascia.

"(j) Paint all exposed exterior surfaces with non-toxic paint in such manner as to prevent warping, splitting and weathering.

"(k) Repair and replace broken, missing or deteriorated front and rear porch posts and collapsed, cracked or deteriorated porch floorings, doing required painting and shingling of porch roofs. Paint all pertinent structures subject to weathering.

"(8)  Do the following plumbing work:

"(a) Repair or replace leaking or stopped commodes.

"(b) Eliminate stoppages or obstructions in water pipes or other obstructions which permit the backflow of waste water into sinks and bathtubs.

"(c) Eliminate cross-connections which cause or permit the backflow or backsiphonage of raw sewage into the freshwater supply, if any.

"(d) Repair or replace leaking pipes, faucets and sinks.

"(e) Provide water pressure in dwellings of at least thirty pounds per square inch.

"(9) Within ten (10) days of the date of this Order disconnect the electricity in any dwelling which is unoccupied as of the date of this Order and thereafter disconnect the electricity in any dwelling within 24 hours after it becomes unoccupied for as long as there are tenants in Warminster Heights.

"(10) All work shall be performed in accordance with the applicable Codes of Warminster Township:

"(a) Warminster Building Code Ordinance No. 210 of December 21, 1970.

"(b) Warminster Plumbing Code Ordinance No. 129 of November 22, 1965, as amended.

"(c) Warminster Electrical Code Ordinance No. 15 of November 22, 1965, as amended.

"(11) No tenant shall be evicted:

"(a) Where the motive is retaliation for testimony given in behalf of the Commonwealth in this case or

"(b) Where the motive is retaliation for complaints as to conditions reasonably believed to be in violations of any law, ordinance, regulation, or this order.

"(12) The things required by paragraphs (1), (2), (3) and (6)(c) hereof shall be accomplished within ninety (90) days from the date of the filing hereof. The work required by paragraphs (4), (5), (6)(a), (6)(b), (7) and (8) shall be commenced immediately upon the filing hereof, shall be prosecuted diligently and completed on or before July 1, 1974."