**Chester County Health Department v. Jacobs**

BROUGHTON Chairman, August 8, 1974.—This matter is before the board on an appeal filed by G. William Jacobs ("appellant"), from the decision of the Chester County Health Department ("Chester County"), whereby appellant's applications for permits to install two individual on-lot sewage disposal systems on land situate in West Caln Township, Chester County, were denied.

A hearing on this appeal was held before Louis R. Salamon, Esq., Hearing Examiner, on February 25, 1974.

Appellant was not represented by counsel at the hearing. He did, however, recognize that he had the privilege to be represented by counsel, and he voluntarily chose to be unrepresented.

## FINDINGS OF FACT

1. Appellant is a builder and developer who has purchased or who has a contract to purchase 20 lots, the size of each being one acre, in West Caln Township, Chester County, Pa.

2. This property in which appellant has an interest was approved for subdivision by West Caln Township, pursuant to an order of the Court of Common Pleas of Chester County, in December 1972, and appellant has recorded a subdivision plan in the office of the Recorder of Deeds of Chester County.

3. At all times material to this proceeding, Chester County was the entity which was responsible for the

administration of section 7 of the Pennsylvania Sewage Facilities Act of January 24, 1966, P. L. (1965) 1535, as amended, 35 PS §750.7,[1] and the standards adopted by the Department of Environmental Resources pursuant thereto, in West Caln Township.

4. In September 1972, appellant applied to Chester County for permits to install three on-lot sewage disposal systems to serve 12 of the 20 lots in which appellant had an interest.

5. On a date or on several dates between September 1972 and December 12, 1972, appellant revised his plans and submitted applications to Chester County for permits to install three on-lot sewage disposal systems to serve six of the 20 lots in which appellant had an interest.

6. On December 12, 1972, Chester County, by its Supervising Sanitarian, David A. Jackson, refused to issue the permits which appellant requested. Pursuant to the request of appellant, a hearing on said refusal was held before the Director of Chester County on December 27, 1972, and Mr. Jackson's decision was sustained.

7. Thereafter, appellant revised his plans in an attempt to satisfy Chester County.

8. On March 11, 1973, appellant submitted his final revised applications and plans to Chester County.

9. By virtue of these final revised applications and plans, appellant sought permits to install three on-lot sewage disposal systems to service the following lots:

(a) one such system to service a dwelling to be con-

---

[1] This section provides, inter alia, that no person shall install an individual sewage disposal system without first obtaining a permit indicating that the site and the plans and specifications of such system comply with the provisions of the Pennsylvania Sewage Facilities Act, supra, and the standards adopted pursuant thereto.

structed on Lot 1 and a dwelling to be constructed on Lot 4 (Application No. 204253, Exhibit E-1);

(b) one such system to service a dwelling to be constructed on Lot 2 and a dwelling to be constructed on Lot 3 (Application No. 204254, Exhibit E-2);

(c) one such system to service a dwelling to be constructed on Lot 5 and a dwelling to be constructed on Lot 6 (Application No. 204255, Exhibit E-3).

10. On March 29, 1973, Chester County issued a permit to appellant which authorized him to construct and install an individual on-lot sewage disposal system on Lot 1 to service a dwelling to be constructed on Lot 1. Appellant's application for a permit for an on-lot sewage disposal system to service a dwelling to be constructed on Lot 1 and a dwelling to be constructed on Lot 4 (Application No. 204253) was withdrawn and is not the subject of the present appeal.

11. Each system which appellant proposes to install is an "individual sewage system" within the definition of that term which is found in section 2 of the Pennsylvania Sewage Facilities Act, supra, 35 PS §750.2(1), and which is repeated in the Rules and Regulations of the Department of Environmental Resources, Chapter 71, 25 Pa. Code §71.1, and Chapter 73, 25 Pa. Code §73.1.

12. There are no soil or geological conditions on or in any of the land wherein the proposed systems would be located which would preclude safe and proper operation of the individual sewage systems proposed by Appellant.

13. The system which appellant plans to install to service dwellings to be constructed on Lots 2 and 3 would, according to Application No. 204254, be situate, in part, on Lot 4.

14. Appellant submitted a plot plan to Chester County on October 17, 1972, upon which there was

shown the 20 lots in which appellant had an interest. On the face of this plot plan, appellant indicated that ten lots would be on one side of a strip of land, 60 feet in width, and that ten lots would be on the other side of said strip of land. Appellant indicated that the on-lot sewage disposal systems that would be installed to service each dwelling to be constructed on each said lot would be located within said strip of land.

15. This 60-foot wide strip of land was designated by appellant to be the area contained in an easement which he would grant to an entity to be known as Rolling Hills Service Company. Rolling Hills Service Company was to be granted this easement for the purpose of maintaining the on-lot sewage disposal systems contained in the 60-foot wide strip of land.

16. Chester County refused to issue the permits which appellant requested because appellant refused to abide by Chester County's prerequisite for the issuance of those permits, to-wit, that appellant first cause an easement agreement, prepared for the most part by counsel for Chester County, to be recorded.

17. This "easement agreement" contains provisions which, inter alia:

(a) describe, generally, the easement area;

(b) indicate that the on-lot sewage disposal systems proposed by appellant would be placed entirely in the easement area;

(c) set forth the entity and/or the persons which, or who, would have access to the easement area for the purpose of repairs and maintenance of the systems;

(d) restrict the use to be made of the easement area;

(e) authorize judgment by confession against any "responsible" party who or which is in default of its or his obligations to repair, replace or maintain the systems.

18. It is most probable that on-lot sewage disposal

systems will malfunction. To avoid, or to delay, or to decrease the adverse effects to the public health from malfunctioning on-lot sewage disposal systems, such systems must be properly maintained, including pumping of the treatment tank. Furthermore, prompt and expeditious action must be taken to correct the malfunction.

19. In order to facilitate regular maintenance of on-lot sewage disposal systems and in order to permit proper repair of on-lot sewage disposal systems which are malfunctioning by, inter alia, people whose homes are connected to such systems, such people must have access to those systems, unfettered by the right of other landowners to deny such access.

## DISCUSSION

In the usual case where the Department of Environmental Resources or other approving body has denied an application for an on-lot sewage disposal permit, this board is called upon to determine whether soil or geological conditions on or in the land upon which the proposed sewage disposal system be located would preclude safe and proper operation of such system.

In this case, however, there is no such problem. Here, Chester County has reviewed appellant's applications for on-lot sewage disposal systems and has found that these systems would be constructed, in part, on lots which would not be owned by those persons whose homes would be connected to such systems. Although it is conceded that the applications and an accompanying plot plan disclose that appellant will place these systems wholly within the confines of an easement strip which would be common to the homes which would be connected to such systems,

Chester County has refused to issue permits to appellant for the installation of these systems.

Chester County has refused to issue these permits to appellant because appellant will not record this easement before the issuance of the permits and before the first lot in which he has an interest is sold, because appellant will not provide that each property owner whose home would be connected to this easement or the sewage facility service company which appellant has designated will have unfettered access to each system, and because appellant will not provide that such property owner or designated sewage facility service company will be subject to judgment by confession if he, or it, defaults in his, or its, responsibility to share in the cost of maintenance or repair of the system.

Chester County has based its refusal to issue the requested permits, for the reasons hereinbefore set forth, on the following provision contained in chapter 71 of the Rules and Regulations of the Department of Environmental Resources, supra:

"§71.55. Denial and revocation of permits

"A permit may be denied or revoked by the approving body at any time for any one or more of the following reasons, which will be incorporated into the written denial:

". . .

"(4) Failure of the proposed system to adequately protect the public health and prevent pollution."

Appellant contends that Chester County has, by refusing to issue the requested permits to him for the above-described reasons, in effect, arbitrarily created standards which are not authorized by the Pennsylvania Sewage Facilities Act, supra, or by the Rules and Regulations of the Department of Environmental Resources adopted pursuant thereto. Appellant con-

tends, furthermore, that section 71.55(4), supra, does not provide Chester County with the authority to deny permits to him for the reasons which Chester County has set forth as being the factual basis for such denials.

The parties have stipulated that Chester County was, at all times material to this proceeding, the entity responsible for administration of the Pennsylvania Sewage Facilities Act, supra, and the standards adopted by the Department of Environmental Resources pursuant thereto.[2]

One such standard is contained in section 71.55(4), supra, if the proposed system fails to adequately protect the public health and to prevent pollution, the approving body may refuse to issue the permit.

It is not here contended that the soils or that the geological conditions on appellant's land will endanger the public health if on-lot sewage disposal systems are installed thereupon or that such systems will, without more, create pollution problems.

However, considerations of the protection of the public health and the prevention of pollution demand that each and every aspect of such systems be carefully scrutinized.

One such aspect is the location of such systems generally. In this case, this aspect is made more significant because appellant has planned for two single systems, each of which will serve two homes located on different lots and because parts of each such single system will be located on a lot which will not be served by it.

We can take administrative notice of the fact that on-lot sewage disposal systems need regular maintenance, including, but not limited to, pumping of solids from the treatment tank. Furthermore, even with

---

[2] See our finding of fact no. 3, supra.

regular maintenance, such systems frequently mal-function and raw or inadequately treated sewage may be discharged to the waters of the Commonwealth therefrom.

If there are any impediments to access to such systems by those persons to whose homes they are connected, there is a real and clear danger to the public health by virtue of the inevitable discharge of raw or untreated sewage from such systems caused by improper maintenance of or by malfunction of the systems.

If appellant does not take proper steps to provide for unfettered access to the systems which he proposes, there will surely be such impediments.

Appellant agrees that unfettered access to these systems is necessary, and to that end he has provided for an easement strip common to each lot included in his applications. However, appellant disagrees that this easement must be recorded before his permits are issued and before *any* of his lots are sold.

We find that, if this easement is not prerecorded before the sale of the *first* lot by appellant and, if all potential buyers from appellant are not put on notice of the existence of such an easement by virtue of such recording, such easement could be unavailing or, at the least, law suits would be needed to determine its effect on such buyers.[3]

We find that the impediment to access to these systems, which could be created by a lot owner whose title to his property would be unaffected by the ease-

---

[3] This problem could perhaps be solved if the easement (or system for reciprocal easements) were set forth in all of the deeds out from appellant, with other easements cross-referenced. But a requirement for such a set of individual deed provisions could be considerably more complex, and extremely difficult for a county department of health to enforce.

ment which appellant does not want to prerecord, could easily create a danger to the public health and could easily create a situation where pollution could not be prevented or, at least, could not speedily be abated.

We find that Chester County was authorized, under the terms of section 71.55(4), to refuse to issue the requested permits to appellant unless he guarantees all lot owners free access to the systems which will be connected to their homes through the vehicle of prerecording the easement which appellant has planned.[4]

Appellant complained during the course of the hearing that section 71.55(4), supra, is a "catch all" which enables an approving body to refuse to issue a permit without a legally sufficient reason.

We disagree with appellant and direct his attention to the numerous cases where our courts have held that such a general standard as is contained in section 71.55(4), supra, is proper and constitutionally adequate. See Commonwealth v. Harmar Coal Company, 452 Pa. 77, 306 A.2d 308, 316 (1973); DePaul v. Kauffman, 441 Pa. 386, 272 A.2d 500 (1971); Pa. Water & Power Resources Board v. Green Spring Company, 394 Pa. 1, 145 A.2d 178 (1958); Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A.2d 587 (1957); Tate Liquor License Case, 196 Pa. Superior Ct. 193, 173 A.2d 657 (1961).

We will agree with appellant, however, that Chester County cannot lawfully require that appellant provide

---

[4] We note that this problem of access to the on-lot sewage disposal systems proposed by appellant could very easily have been solved if West Caln Township would have insisted, pursuant to a subdivision and land subdivision ordinance enacted pursuant to sections 501 and 503 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, as amended, 53 PS § 10501 and 53 PS § 10503, that such access to these systems would be a prerequisite to subdivision approval.

*all* the prerequisites which Chester County has demanded.

We find that Chester County cannot lawfully refuse to issue the permits which appellant has requested for the reason that he will not provide that each property owner or designated sewage facility service company will be subject to judgment by confession if he, or it, defaults in his, or its, responsibility to maintain or repair the system.

We hold that such a requirement by Chester County is not related to the protection of the public health or to the prevention of pollution. We hold, furthermore, that Chester County has no authority under the Pennsylvania Sewage Facilities Act, supra, under the rules and regulations adopted pursuant thereto or under any other environmental protection law currently in force, to require a provision which would, in effect, adjudicate obligations between private parties. See National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 60 S. Ct. 569, 576, 84 L. Ed. 799 (1940); Elias v. Environmental Hearing Board, 10 Pa. Commonwealth Ct. 489, 312 A.2d 486, 489 (1973); Lacy v. East Broad Top Railroad & Coal Co., 168 Pa. Superior Ct. 351, 77 A.2d 706, 710 (1951).

We hold that, in the interest of the protection of the public health and the prevention of pollution and, by virtue of the authority contained in section 71.55(4), supra, Chester County may refuse to issue permits for the requested on-lot sewage disposal systems to appellant unless he:

(1) first records the easement which he has designated to be the area in which the proposed systems will be located; and

(2) includes language in that easement or records a writing wherein each purchaser of one of his lots is

put on notice that other purchasers shall have un-fettered access to such systems.

We hold that appellant need do no more in order to be lawfully entitled to receive the permits which he has requested.

## CONCLUSIONS OF LAW

1. The Environmental Hearing Board has juris-diction of the parties and the subject matter of this appeal.

2. At all times material to this proceeding, Chester County was the entity which was responsible for the administration of section 7 of the Pennsylvania Sew-age Facilities Act of January 24, 1966, P. L. (1965) 1535, as amended, 35 PS §750.7, and the standards adopted by the Department of Environmental Resources pur-suant thereto, in West Caln Township, Chester County.

3. Chester County Health Department may lawfully administer the provisions of Chapter 71, sec. 71.55(4) of the Rules and Regulations of the Department of Environmental Resources, 25 Pa. Code §71.55(4), and said provisions are applicable to appellant in the present matter.

4. Any impediments to access to the on-lot sewage disposal systems proposed by appellant which would operate against those persons whose homes would be connected to those systems will create a situation where those systems will fail to adequately protect the public health and prevent pollution.

5. Chester County Health Department acted in accordance with the provisions of section 71.55(4), supra, when it denied to issue permits to appellant for installation of certain on-lot sewage disposal systems unless:

(a) Appellant first records the easement which he has designated to be the area in which the proposed systems will be located; and

(b) Appellant includes language in that easement or records a writing wherein each purchaser of one of his lots is put on notice that other purchasers shall have unfettered access to such systems.

6. Chester County Health Department may not lawfully refuse to issue permits to appellant for installation of certain on-lot sewage disposal systems on the grounds that the easement provision does not contain a confession-of-judgment clause.

## ORDER

And now, August 8, 1974, it is ordered that the action of Chester County Health Department, in denying the applications of appellant herein for on-lot sewage disposal systems is affirmed in part, and reversed in part, consistent with the language contained in our discussion and consistent with the language contained in our conclusions of law numbers 5 and 6.