Commonwealth of Pennsylvania Department of Environmental Resources *v.* Mill Service, Inc., Appellant.

Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*H. Woodruff Turner*, with him *J. Richard Lauver, John E. Beard, III*, and *Kirkpatrick, Lockhart, Johnson and Hutchison*, for appellant.

*Eric Pearson*, with him *Patrick C. McGinley*, Special Assistant Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, November 17, 1975

This case is an appeal by Mill Service, Inc. (appellant) from a decision and order of the Pennsylvania Environ-

644

Hearing Board (Board), sustaining an action of the Department of Environmental Resources revoking appellant's industrial waste permit. We find the Department abused its discretion in taking such action and modify the Board's order.

Appellant owns and operates an industrial waste treatment facility in South Huntingdon Township, Pennsylvania, which is in part of the Sewickley Creek Watershed. In the course of its business, appellant collects an acidic waste product known as "pickling liquor" from area steel plants, neutralizes the acid, and dispenses the treated waste into large earthen lagoons.

On February 27, 1974, pursuant to The Clean Streams Law (Act), Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq., appellant applied to the Department for an industrial waste permit to authorize the construction of an additional, fourth lagoon. At the time, appellant had been operating with three lagoons without a permit. Upon completion of the new facilities, appellant intended to empty and abandon existing lagoons numbers two and three. An agreement between appellant and the Department was entered into which governed the operation of the existing facilities until the application could be reviewed.

A permit was issued to appellant on August 13, 1974, which approved the new construction and provided for the operation and maintenance of the three existing lagoons. However, the permit contained conditions which prohibited the discharge of waste material in any quantity and under any circumstances into the waters of the Commonwealth unless prior approval was received from the Department.

Three months later, on November 14, 1974, a Department field investigator, pursuant to a complaint, entered appellant's facility and found that waste contained in lagoon number three was entering Sewickley Creek through a pipe imbedded in the wall of the lagoon two

feet from the top. Consequently, on November 18, 1974, without a hearing and 15 working days prior to the completion date of the fourth lagoon, the Department found appellant in violation of the conditions of the permit and provisions of the Act. Accordingly, the permit was revoked and appellant ordered to cease all operations until a new permit could be obtained. Upon receipt of the notice of the Department order, appellant rendered the pipe inoperative, thereby removing the immediate source of discharge.

On appeal and following a hearing, the Board sustained the action of the Department. Appellant is now before this Court and has been granted a supersedeas pending final resolution of the case.

The Department revoked the permit pursuant to Section 610 of the Act, 35 P.S. §691.610, which provides, in part:

> "*The department may issue such orders as are necessary to aid in the enforcement of the provisions of this act. Such orders shall include, but shall not be limited to, orders* modifying, suspending or revoking permits and orders requiring persons or municipalities to cease operations of an establishment which, in the course of its operation, has a discharge which is in violation of any provision of this act. *Such an order may be issued* if the department finds that a condition existing in or on the operation involved is causing or is creating a danger of pollution of the waters of the Commonwealth, or *if it finds that the permittee,* or any person or municipality *is in violation of any relevant provision of this act,* or of any relevant rule, regulation or order of the board or relevant order of the department. . . ." (Emphasis added.)

Although the provision gives the Department wide discretion in issuing orders to enforce the Act, such orders must be "necessary to aid" that enforcement. Accordingly, Section 610 must be interpreted to require

the Department to select from those remedies available to it,[1] one that is reasonable and appropriate under the circumstances. The Board, in its decision, followed this construction of the Section and stated that a civil or criminal penalty would have been a more appropriate sanction than revocation in the present case due to the isolated nature of the discharge.

However, the Board determined that the Department was justified in revoking the permit by concluding, as a matter of law, that the discharge was an intentional act on the part of the appellant. The Board made the following findings of fact:

"6. Although the Appellant knew that there was an existing pipe in lagoon number three which if unplugged would discharge waste waters if the contents in the lagoon were at least at the level of the pipe, Appellant did not reveal the existence of this pipe to DER when it made application for a permit.

. . . .

"8. On November 14, 1974, a member of DER, in response to a complaint, went onto the property of Appellant for the purpose of ascertaining whether there was a discharge from Appellant's operation into the waters of the Commonwealth. Upon investigation, he ascertained that there was a wooden plug, apparently removed from the pipe, laying next to the pipe. He also found that the inlet end of the pipe in the lagoon was concealed with rocks."

Although appellant does not deny that the discharge violated the permit and the Act, it challenges the revocation on the grounds, *inter alia,* that the intentional nature

---

1. *E.g.,* Section 601 of The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.601 (abate and enjoin nuisances); Section 602 *id.,* 35 P.S. §691.602 (seek criminal penalties); Section 605 *id.,* 35 P.S. §691.605 (seek civil penalties); Section 609 *i.d.,* 35 P.S. §691.609 (withhold permits); Section 610 *id.,* 35 P.S. §691.610 (issue enforcement orders).

of the violation is unsupported by the evidence, and that revocation is an excessive penalty and thus an abuse of Department discretion under Section 610. We agree.

Our scope of review in appeals from the Board is limited by Section 44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.44, to a determination, *inter alia*, whether any finding of fact necesary to the Board's decision is not supported by substantial evidence. Yet even though findings of fact are founded upon substantial evidence, such findings must also support the conclusions of law if the agency adjudication is to stand. *State Real Estate Commission v. Bewley*, 1 Pa. Commonwealth Ct. 85, 272 A.2d 531 (1971).

The Department argues that the Board's conclusion of an intentional violation of the Act is not relevant to this Court's review of the Department's exercise of its Section 610 permit revocation power. Rather, the Department contends the conclusion of the Board that appellant violated the Act is alone sufficient. We disagree.

The argument of the Department ignores the basic power of this Court to determine whether the Department has abused its discretion in the exercise of discretionary powers. *Sierra Club v. Water Sanitary Board*, 3 Pa. Commonwealth Ct. 110, 281 A.2d 256 (1971). While we agree that a violation of the Act must be found to authorize Department action under Section 610, a further conclusion, although not necessarily of an intentional violation, must be made to support the scope of that action. "Otherwise neither the person against whom the penalty was imposed nor the reviewing court can possibly determine whether the agency abused its discretion in terms of penalty." *Bewley, supra*, 1 Pa. Commonwealth Ct. at 95, 272 A.2d at 536. Consequently, the conclusion of the Board that the discharge was an intentional act of appellant is relevant.

However, although relevant, that conclusion is not supported by the findings of fact made by the Board.

Those findings, which are themselves supported by substantial evidence, coupled with our review of the record, merely establish two independent facts: that appellant knew of the existence and function of the pipe in lagoon number three; and that on November 14, 1974, a wooden plug was removed from the discharge end of the pipe allowing waste to escape. The Board's findings and our review do not support a conclusion that appellant acted upon its knowledge of the pipe to intentionally remove the plug. At most, there exists a mere suspicion.

Consequently, since this case involved an isolated discharge, the immediate source of which was removed by appellant's dismantling of the pipe, and the ultimate source of which was to be shortly removed by the abandonment of lagoon number three, revocation was an excessive penalty under the circumstances. Therefore, we hold the action of the Department under Section 610 an abuse of its discretion and cannot sustain the Board's affirmance. Since we rest our decision on this ground, it is unnecessary to consider appellant's other contentions.[2]

Accordingly, since this Court has the power to modify Board adjudications, *Elias v. Pennsylvania Environmental Hearing Board,* 10 Pa. Commonwealth Ct. 489, 312 A.2d 486 (1973), we enter the following

### ORDER

NOW, November 17, 1975, it is ordered that the action of the Department of Environmental Resources, in revoking the waste water management permit issued to Mill Service, Inc., on August 13, 1975, and ordering Mill

---

2. Appellant also attacked the revocation as violative of the Act, and contrary to the conditions of the permit and terms of the interim agreement with the Department. Appellant further argued that the Board improperly considered charges against it which were not contained in the Department order, that it was denied effective cross-examination of a government witness, and that the Department order, without notice and hearing, was an unconstitutional deprivation of its property.

Service, Inc. to cease operation, is hereby reversed and that said permit be reinstated. It is further ordered that a penalty in the amount of one hundred dollars ($100.00) be assessed against Mill Service, Inc., payable to the Commonwealth of Pennsylvania.