William Kundrat, D.D.S., Petitioner *v.* Commonwealth of Pennsylvania, State Dental Council and Examining Board, Respondent.

Argued December 18, 1981, before Judges ROGERS, BLATT and WILLIAMS, JR., sitting as a panel of three.

*Richard C. Snelbaker, Snelbaker, McCaleb & Elicker,* for petitioner.

*Michael J. McCaney, Jr.,* Assistant Counsel, with him *James J. Kutz,* Assistant Counsel, *David F. Phifer,* Chief Counsel, and *Jay Waldman,* General Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., July 8, 1982:

The instant matter comes before this Court on a Petition for Review filed by William Kundrat, D.D.S. Petitioner Kundrat appeals from an order of the State Dental Council and Examining Board (Board) finding him guilty of violating certain provisions of The Dental Law[1] and revoking his license to practice dentistry.

Petitioner, Dr. Kundrat, has been engaged in the practice of dentistry in the state of Pennsylvania since 1965. The incident which gave rise to the present controversy occurred in July, 1975. At that time, Mrs. Francis Pribulsky, a patient and personal friend of Dr. Kundrat's, experienced a problem with her teeth, for which she sought Dr. Kundrat's professional advice. Mrs. Pribulsky had cracked one of her four remaining lower teeth. The patient's other teeth had previously been extracted and she had worn a full

---

[1] Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. §120 *et seq.*

upper denture for many years. Dr. Kundrat removed Mrs. Pribulsky's broken tooth, after which he discussed with her the possibility of constructing some type of device with artificial teeth to replace her missing lower teeth. There exists disagreement in the record as to the content of the conversation between Mrs. Pribulsky and Dr. Kundrat involving the replacement of Mrs. Pribulsky's teeth. Dr. Kundrat stated that he described to Mrs. Pribulsky three alternative procedures for the replacement of her missing teeth. The doctor declared that Mrs. Pribulsky selected the cantilever bridge, a ten unit fixed-tooth bridge. He further stated that based upon Mrs. Pribulsky's wishes, he constructed a cantilever bridge and placed it in her mouth.

Mrs. Pribulsky, on the other hand, testified that Dr. Kundrat recommended the cantilever bridge and in reliance on his advice she authorized him to proceed with its construction.

Dr. Kundrat built the cantilever bridge and installed it in Mrs. Pribulsky's mouth in November, 1975. Approximately eleven months later, Mrs. Pribulsky, after suffering from several infections and experiencing discomfort from the device, was advised that the bridge would not work successfully in her mouth. At that time, Dr. Kundrat suggested that Mrs. Pribulsky be fitted for a full lower denture.

In February, 1977, Mrs. Pribulsky filed a complaint against Dr. Kundrat with the Harrisburg Dental Society. A Citation and Notice of Hearing was issued by the Board in June, 1978, charging Dr. Kundrat with violating certain sections of The Dental Law.[2] Shortly thereafter, a formal hearing in the matter was conducted by the Board. Following the hearing, an adjudication and order was issued by the Board find-

[2] The citation charged Dr. Kundrat with engaging in misleading or deceptive representations and wilful or gross malpractice.

ing Dr. Kundrat guilty of the charges filed and revoking his license to practice dentistry in the Commonwealth of Pennsylvania.

Subsequent to the revocation order, Dr. Kundrat filed a Petition for Rehearing and Reconsideration with the Board. A second hearing was held and the Board issued a determination affirming its previous order of revocation. The Board, after considering the evidence, found ".(a) that [Dr. Kundrat] made misleading and deceptive representations to Mrs. Pribulsky in connection with the dental treatment that he provided to her; and (b) that he engaged in both gross malpractice and unprofessional conduct[3] detrimental to the public health in connection with said dental treatment." In that regard, the Board concluded that Dr. Kundrat wrongly gave Mrs. Pribulsky substantial reason to believe that the cantilever bridge would work successfully in her mouth. Additionally the Board determined that, given the condition of Mrs. Pribulsky's mouth, treating it with a ten-tooth cantilever bridge amounted to improper dentistry: "Support for the bridge would have had to have come from Mrs. Pribulsky's three remaining teeth. Given the fact that all three were anterior teeth, it would have been highly unreasonable to expect that, with their insufficient roots and bone structure, they would have been capable of providing such support. The failure of the procedure was all but inevitable." It is from that adjudication that Petitioner now appeals.

Petitioner presents to this Court three arguments in support of his appeal. First, Petitioner alleges that

---

[3] Section 33.51 of the Rules and Regulations of the State Dental Council and Examining Board, 49 Pa. Code §33.51, provides that the term " 'unprofessional conduct' shall include . . . receiving money through misrepresentation or fraud; poor quality or unsatisfactory service; . . . [or] performing poor quality or unnecessary services. . . ."

there exists no evidence on the record to establish that he engaged in gross malpractice and unprofessional conduct. Specifically, Petitioner asserts that there was no expert testimony before the Board as to the proper use of the cantilever bridge or as to its appropriateness in the instant case.

In addressing Petitioner's first contention, we must briefly discuss the function of expert testimony and the circumstances under which its use is required. Expert testimony is utilized to assist a trier of fact to understand the evidence presented or to determine a fact in issue. It is appropriately employed in situations where the subject matter of the inquiry is one involving special skills, knowledge, and training which are normally beyond the experience of the factfinder. *Weisman v. Sauder Chevrolet Co.*, 402 Pa. 272, 167 A.2d 308 (1961); *Lebesco v. Southeastern Pennsylvania Transportation Authority*, 251 Pa. Superior Ct. 415, 380 A.2d 848 (1977). However, if all of the pertinent facts can be accurately described to the factfinder and the factfinder is capable of comprehending such facts and drawing the proper conclusions, then the testimony of an expert witness is not needed. *Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967).

The Supreme Court of this Commonwealth has recognized the special skills and expertise possessed of those people comprising the membership of its various administrative agencies. In *Pennsylvania Labor Relation Board v. Sand's Restaurant Corp.*, 429 Pa. 479, 240 A.2d 801 (1968), the Supreme Court stated: "An administrative agency with power after hearings to determine on the evidence in adversary proceedings whether violations of statutory commands have occurred may infer within the limits of the inquiry from the proven facts such conclusions as reasonably may be based upon the facts proven. One of the purposes which lead to the creation of such boards is to have

decisions based upon evidential facts under the particular statute made by experienced officials with an adequate appreciation of the complexities of the subject which is entrusted to their administration . . . In these cases, we but restated a rule familiar to the law and followed by all fact-finding tribunals—that it is permissible to draw on experience in factual inquiries '' *Id.* at 486, 240 A.2d at 805. (quoting in part from *Republic Aviation Corp. v. National Labor Relations Board,* 324 U.S. 793, 800 (1945)).

The membership of the State Dental Council and Examining Board includes the president of the Pennsylvania State Dental Society, the Commissioner of Professional and Occupational Affairs, and a number of dentists who have been engaged in the practice of dentistry in this Commonwealth for at least ten years.[4] We can logically assume that the dentists sitting on the Board which heard the case are knowledgeable and experienced in the field of dental medicine and the procedures connected therewith. As such, they are permitted to draw on their expertise in ruling on matters which come before them.

---

[4] Section 414 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §124, states in part:

The State Dental Council and Examining Board shall consist of the president of the Pennsylvania State Dental Society, the Secretary of Health, the Commissioner of Professional and Occupational Affairs and nine persons, at least two of whom shall represent the public at large, and one of whom shall be a dental hygienist, whose terms of office shall be six years.

The Pennsylvania State Dental Society shall have power to nominate, from its membership, at least double the number of professional candidates required to fill the dental vacancies occurring annually in the membership of the State Dental Council and Examining Board. Such candidates shall have been engaged in the actual practice of dentistry in this Commonwealth during a period of not less than ten years.

Furthermore, the Board is as competent in ruling on the propriety of dental practices as any other dentist who might be called upon to testify as an expert witness.

In the case at bar, the Board examined x-rays of Mrs. Pribulsky's mouth which were taken and submitted into evidence by the Petitioner. The members of the Board were extremely familiar with the cantilever bridge itself and with the procedure involved in its insertion. Based upon their knowledge of the use of the cantilever bridge and their study of the complainant's mouth, the Board determined that the device in question could not have been successful in her mouth. We conclude that the Board was quite capable of resolving this matter without the aid of expert testimony. Therefore, we must reject Petitioner's first contention as being without merit.

Petitioner next argues that the Board's decision finding him guilty of misleading and deceptive representations in connection with the dental treatment provided is not supported by substantial evidence. He maintains that the Board heard conflicting testimony as to the professional advice he rendered at the time Mrs. Pribulsky selected the method of treatment.

The Board, in formulating its finding, placed its reliance upon the testimony of Mrs. Pribulsky. Mrs. Pribulsky stated that Dr. Kundrat advocated the use of a cantilever bridge to replace her missing teeth. She declared that at no time was she advised that the ten-tooth bridge might not work or that it was an experimental procedure. Although Dr. Kundrat's testimony contradicted that of Mrs. Pribulsky, the Board gave credence to the latter's attestations.

On appeals from administrative boards and agencies, Commonwealth Court's scope of review is limited to a determination as to whether the board or agency abused its discretion or committed an error of

law. *Williams v. Civil Service Commission,* 457 Pa. 470, 327 A.2d 70 (1974). It is not the function of this Court to judge the weight and credibility of the evidence. *Boughter v. Department of Public Welfare,* 55 Pa. Commonwealth Ct. 521, 423 A.2d 806 (1980). Those matters are solely within the province of the fact-finding agency. *Carr v. State Board of Pharmacy,* 48 Pa. Commonwealth Ct. 330, 409 A.2d 941 (1980). Thus, this Court is without power to grant Petitioner relief based on his second assertion. Furthermore, our review of the record indicates that the Board's findings are supported by substantial evidence.

Finally, Petitioner argues that the revocation of his license constitutes an abuse of discretion by the Board. We cannot agree. Section 3(i) of The Dental Law, 63 P.S. §122(i), authorizes the Board:

> To suspend and revoke, by majority action of the entire board, the license or registration of any licensee who has been guilty of a crime or misdemeanor involving moral turpitude; or of a violation of any of the provisions of this act; or of fraudulent or unlawful practices, or fraudulent, misleading or deceptive representations; or of unprofessional conduct, detrimental or dangerous to the public health, safety, morals or welfare; or of wilful or gross malpractice or neglect; . . . .

This Court has held that "It is clear from a reading of Section 3 of the [Law] that the Board is essentially a watchdog of the dental profession, empowered to maintain the high standards which the people of this Commonwealth have a right to expect from their dentists" *State Dental Council and Examining Board v. Friedman,* 27 Pa. Commonwealth Ct. 546, 551, 367 A.2d 363, 366 (1976). We can find nothing in the record to establish an abuse of discretion on the part of the Board.

For the reasons set forth above, we must affirm the Board's decision.

ORDER

AND Now, the 8th day of July, 1982, the order of the State Dental Council and Examining Board dated December 4, 1980, revoking the license of William Kundrat, D.D.S., to practice dentistry is hereby affirmed.

Judges MENCER and PALLADINO did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE BLATT:

I regret that I must dissent.

While this Court may not interfere with the proper exercise of discretion by the State Dental Council and Examining Board (Board) pursuant to the authority granted it under Section 3(i) of The Dental Law, Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. §122(i), we can address whether or not there was an abuse of that discretion by the Board in setting a penalty. We may not substitute our judgment for the Board's in the finding of a violation but we may examine whether or not the penalty was fashioned in a reasonable manner to fit the violation found. *Trevorton Anthracite Co. v. Department of Environmental Resources,* 42 Pa. Commonwealth Ct. 84, 400 A.2d 240 (1979).

I would agree that the Board in this case, having chosen to believe the testimony of the complainant, properly concluded that Dr. Kundrat had practiced "improper dentistry" which, given the circumstances of the case, amounted to "gross malpractice" and "unprofessional conduct". Under the facts of this case, however, I believe that revocation of Dr. Kundrat's license on the basis of the particular incident involved here, which occurred in the course of a previously unblemished career, was an unreasonably harsh penalty.

Revocation of a dentist's license is the ultimate penalty which can be applied, for it terminates his ability to practice in a specialized discipline to which he has devoted years of preparation, and its imposition, I believe, ought to be reserved for serious and/or repeated improper practices. In this case, which involves a single incident rather than a course of conduct, and in which the complainant has been "made whole" by an award of damages and by the expectation of, and ability to, secure appropriate bridgework, I believe that a license suspension would have been more suitable.