Gerald T. Curran, Petitioner *v.* Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs, State Registration Board of Professional Engineers, Respondent.

38

Argued May 9, 1985, before Judges MacPhail, Barry and Palladino, sitting as a panel of three.

*Edward E. Kopko,* for petitioner.

*Jerome Grossi,* Counsel, with him, *Joyce McKeever,* Chief Counsel, and *David F. Phifer,* Chief Counsel, Department of State, for respondent.

Opinion by Judge MacPhail, September 18, 1985:
 Gerald T. Curran (Petitioner) appeals here from a decision of the State Registration Board for Profes-

sional Engineers (Board) denying him a license by oral examination as a professional engineer.

Petitioner completed the Navy College Training Program in 1942, taking courses in, *inter alia,* physics, advanced mathematics, navigation, and theory of flight. Petitioner has been employed in the engineering field since 1946. Petitioner sought to gain licensure and registration with the Board pursuant to Section 151(b)(5) of the Professional Engineers Registration Law (Law), Act of May 23, 1945, P.L. 913, *as amended,* 63 P.S. §151(b)(5). Section 151(b)(5) provides in pertinent part:

> (b) Licensing Professional Engineers.—To provide for and to regulate the licensing, and to license to engage in the practice of engineering any person of good character and repute who is at least in his twenty-fifth year of age, and who speaks and writes the English language, if such person either—
>
> . . . .
>
> (5) Is possessed of long established and recognized standing in the engineering field, provided said person is not less than fifty years of age and has a record of not less than twenty-five years' experience in engineering, of which at least fifteen years has been in responsible charge of important and outstanding engineering work or teaching. Upon application from such an individual and the payment of the required registration fees, the board may issue to such an applicant a certificate of registration as a professional engineer based upon an oral examination and after approval of a majority of the board: Provided, however, That no certificate of registration as a professional engineer shall be issued by the board

pursuant to this provision on any application for same which is filed more than two years after the effective date of this act.

By letter dated March 9, 1983, the Board informed Petitioner that his request for registration by oral examination was denied on the grounds that Petitioner did not possess "a record of not less than twenty-five years' experience in engineering of which at least fifteen years has been in responsible charge of important and outstanding engineering work." The Board informed Petitioner that he had the option to appeal this determination to the full Board for reconsideration or he could sit for the written examination. Petitioner opted to appeal, and a formal hearing was held to determine whether Petitioner fulfilled the requirements of the Law to be licensed by oral examination. By letter dated September 21, 1983, the Board again denied Petitioner's request for licensure by oral examination. This appeal followed.

Our scope of review of a decision by the Board is limited to a determination of whether constitutional rights were violated, an error of law was committed, or necessary findings were not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Rabino v. State Registration Board for Professional Engineers*, 69 Pa. Commonwealth Ct. 191, 450 A.2d 773 (1982).

Petitioner argues that the Board's decision in holding that Petitioner did not qualify under Section 151 (b)(5) of the Law to be licensed by oral examination is not supported by substantial evidence. The Board argues that Petitioner did not have fifteen years of experience in engineering in responsible charge of important and outstanding engineering work or teaching.

Section 149(i) of the Law defines "Responsible Charge" to mean:

[A] position that requires initiative, skill and independent judgment, and implies such degree of competence and accountability sufficient to qualify an individual to personally and independently engage in and be entrusted with the work involved in the practice of engineering or land surveying. This term does not include positions which require routine performance of sub-professional work such as auxiliary survey personnel (unless acting as chief of party) and drafting personnel.

Our Supreme Court has recognized the special skills and expertise possessed of the members of various administrative agencies. In *Pennsylvania Labor Relations Board v. Sand's Restaurant Corp.*, 429 Pa. 479, 240 A.2d 801 (1968), the Supreme Court stated:

One of the purposes which lead to the creation of such boards is to have decisions based upon evidential facts under the particular statute made by experienced officials with an adequate appreciation of the complexities of the subject which is entrusted to their administration. . . . In these cases, we but restated a rule familiar to the law and followed by all fact-finding tribunals—that it is permissible to draw on experience in factual inquiries.

*Id.* at 486, 240 A.2d at 805.

The membership of the Board includes five registered professional engineers who have been engaged in the practice of the profession of engineering for at least ten years and have been in responsible charge of engineering work for at least five years.[1]

---

[1] Section 425 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *formerly* 71 P.S. §13, repealed by the Act of December 22, 1983 (Act), P.L. 348. A similar provision is now found in Section 151.1 of the Law, added by Section 2 of the Act, 63 P.S. §151.1.

The engineers sitting as members of the Board are knowledgeable and experienced in their field, and are permitted to draw on their expertise in determining what constitutes important and outstanding engineering work as defined by the Law. *Cf. Kundrat v. State Dental Council and Examining Board,* 67 Pa. Commonwealth Ct. 341, 447 A.2d 355 (1982) (dentists sitting on State Dental Board permitted to draw on their expertise)..

In the instant case, the Board reviewed a detailed account of Petitioner's work history, letters of recommendation on his behalf, and examples of his work. Based upon their knowledge of the profession of engineering, the Board determined that Petitioner had not been in responsible charge of important and outstanding engineering work for fifteen years. Because this Court is ill-equipped to evaluate the qualifications of those in the engineering field, we will not substitute our judgment of Petitioner's qualifications for that of the Board's. *Kundrat.*

For the foregoing reasons, the decision of the Board is affirmed.[2]

ORDER

The order of the State Registration Board for Professional Engineers, dated September 21, 1983, is affirmed.

---

[2] We note that Petitioner is not precluded from gaining his license and registration by way of written examination.

---

DISSENTING OPINION BY JUDGE BARRY:

I respectfully disagree with the majority decision.

Resolution of this case depends on whether petitioner had fifteen years of experience in engineering in *responsible charge* of important and outstanding engineering work or teaching. Petitioner has pre-

sented a record replete with undenied testimony of important and outstanding engineering achievement.

Petitioner has detailed both an outstanding educational background[1] and a plethora of work experiences. In March, 1946, after working as a rodman and chainman, he became Survey Crew Chief for Indian Head Coal Company. In June, 1946, petitioner advanced to Colliery Engineer of the Indian Head Colliery and Joliett Coal Company wherein he prepared plans for development of the Indian Head Colliery mining and ventilation system for which he developed a ten year development program. He also prepared plans for dewatering the old Osterman Slope from an elevation of 1280 feet above sea level to an elevation of 1,080 feet above sea level which included a specific plan for ventilation and mining. Petitioner further planned the development of a virgin level at 750 feet above sea level for this slope which entailed lowering the hoisting slope from the 1,080 feet above sea level elevation and a plan for an entirely new ventilation layout. Petitioner supervised and directed this five year project through its completion.

In February, 1952, petitioner advanced to the position of chief engineer in charge of all engineering for Pagnotti Enterprises which included all of the anthracite holdings, both deep and strip mine, in the Pennsylvania anthracite field as well as bituminous strip mine operations in Western Pennsylvania and West Virginia and open pit mining of the manganese deposits for the company in Tennessee. As chief engi-

---

[1] Petitioner's educational background includes entrance to the Navy College Training Program during which time he attended the University of Pennsylvania, Virginia Polytechnic Institute, the University of North Carolina and the University of Georgia. He subsequently entered Naval Training School in Norman, Oklahoma, for flight training.

neer, petitioner put together a strip mine plan, cost, development and forecast for the Mammoth Basin Stripping of Raven Run Colliery which was begun in 1953 and completed in 1961 entirely under his supervision.

In 1956, petitioner examined and reviewed all mining operations of the Lehigh Valley Coal Company to determine a purchase price for Pagnotti Coal Company. This concentrated effort took approximately five months. Drawing on the study and report made by the petitioner, Pagnotti Enterprises purchased this property in 1959.

In the summer of 1959, petitioner journeyed to Pagnotti's Bucyrus Erie Plant in Milwaukee, Wisconsin, and planned a drag line for use in anthracite coal mining on the above purchased properties.

In February, 1960, petitioner planned a new type of blasting for development of the Mammoth Basin at Spring Mountain.

In July, 1963, he resigned from Pagnotti Enterprises to begin his own business and since then has been retained by various coal companies as a consultant in charge of mining, including deep and strip mine operations and has made plans for layouts of sewage systems, housing developments and numerous property surveys. He has recently been involved in studies of air pollution, water pollution and conservation with the Departments of Health and Mines and Mineral Industries. Petitioner, moreover, has been retained by various coal companies as an expert witness to testify regarding valuation of tax appeals involving coal land and damages.

Petitioner has also submitted many excellent letters of reference which recommend him as a qualified engineer of long standing experience and direct responsibility in the anthracite and bituminous min-

ing areas. He is highly recommended as a professional engineer by his peers.

I believe that the undenied testimony of petitioner's background and achievements cannot be denied and certainly meets the definition of "responsible charge" under Section 2(i) of the Law. The definition under this section excludes routine, subprofessional work such as auxiliary survey personnel and drafting personnel. The mention of these particular duties regarding subprofessional work seems to imply the purposeful exclusion of other work of the same general character. By excluding subprofessional work, this section seems to include all other work in the practice of engineering or land surveying. Indeed, the record amply demonstrates that petitioner engaged in engineering positions significantly greater in nature than routine, subprofessional work.

I agree wholeheartedly with the majority opinion when it says this Court is ill-equipped to evaluate the qualifications of those in the engineering field, but I do not agree that our function is to accept the opinion of the Bureau in all cases.

Therefore, I cannot accept the decision of the Board and must dissent.