**Diane GOSLIN, Petitioner**

v.

**STATE BOARD OF MEDICINE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 9, 2008.
Decided May 23, 2008.
As Amended June 2, 2008.

James J. Kutz, Harrisburg, for petitioner.

Gerald S. Smith, Sr. Counsel in Charge, Harrisburg, for respondent.

Robert B. Hoffman, Harrisburg, for amicus curiae, Pennsylvania Medical Society.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Diane Goslin (Goslin) petitions for review of the September 26, 2007, order of the State Board of Medicine (Board), which: (1) ordered Goslin to cease and desist from the practices of medicine and midwifery; (2) imposed a civil penalty of $10,000 on Goslin for the unlicensed practice of medicine; and (3) imposed a civil penalty of $1,000 on Goslin for the unlicensed practice of midwifery. We reverse.

On October 3, 2006, the Board issued an amended order to show cause why the Board should not impose penalties upon Goslin for: (1) engaging in the practice of medicine without a license and holding herself out to the public as being authorized to engage in the practice of medicine and surgery in violation of sections 10 and 39(b) of the Medical Practice Act of 1985 (1985 Act);[1] and (2) engaging in practice as a nurse-midwife without a license and holding herself out to the public as being authorized to engage in practice as a nurse-midwife in violation of sections 35 and 39(b) of the 1985 Act, 63 P.S. §§ 422.35 and 422.39(b). (R.R. at 4a–6a.)

The matter came before a hearing examiner, who issued an adjudication and order, concluding that: (1) Goslin did **not** violate sections 10 and 39(b) of the 1985 Act by engaging in the unauthorized practice of medicine or by holding herself out to the public as being authorized to engage in the practice of medicine and surgery; but (2) Goslin violated sections 35 and 39(b) of the 1985 Act by engaging in unauthorized practice as a nurse-midwife and by holding herself out to the public as being authorized to engage in practice as a nurse-midwife. (H.E.'s Conclusions of Law, Nos. 3–6.) On July 31, 2007, the Board issued a notice of intent to review the hearing examiner's decision, and Goslin filed a brief on exceptions to the hearing examiner's decision.

After reviewing the record, the Board made the following relevant findings of fact:

1. At all times pertinent to the factual allegations, [Goslin] did not hold a license to practice medicine and surgery in the Commonwealth of Pennsylvania.

2. At all times pertinent to the factual allegations, [Goslin] did not hold a li-

---

1. Act of December 20, 1985, P.L. 457, 63 P.S. §§ 422.10 and 422.39(b).

cense to practice as a nurse midwife in the Commonwealth of Pennsylvania.

. . . .

4. [Goslin] holds herself out to the general public as a lay midwife and a certified professional midwife who is certified by the North American Registry of Midwives.[2]

. . . .

6. [Goslin] advertised her business through the use of business cards asserting that she is a CPM (Certified Professional Midwife).

. . . .

11. In her capacity as a lay midwife, [Goslin] provides the following services:

a. Prenatal checkups, including, on occasion, hemoglobin tests;

b. Assistance with labor;

c. Assistance with the delivery of the baby;

d. Postpartum care and pap tests as needed; and

e. Newborn examinations, including weight, measurements, lungs, check for newborn jaundice, PKU test, cord care, nursing history, elimination/void history.

12. As part of her services as a lay midwife, [Goslin] assists with home births; specifically, [Goslin] will:

a. "Coach" the Mother through labor;

b. "Catch" the baby if a family member does not want to do so;

c. Tie and cut the cord if a family member does not want to do so; and

d. Contact a doctor in the event that an emergency situation arises in which medical care is required.

(Board's Findings of Fact, 1–2, 4, 6, 11–12) (citations omitted).

Based on these findings, the Board concluded that: (1) Goslin violated sections 10 and 39(b) of the 1985 Act by engaging in the practice of medicine, but Goslin did **not** hold herself out to the public as being authorized to engage in the practice of medicine and surgery; and (2) Goslin violated section 1 of the Midwife Regulation Law of 1929 (1929 Law)[3] by engaging in the practice of midwifery without a license and by holding herself out to the public as a midwife and, thus, is subject to a sanction under section 39(b) of the 1985 Act. (Board's Conclusions of Law, Nos. 3–6.) The Board then issued a cease and desist order and imposed civil penalties.[4] Goslin now petitions this court for review.[5]

---

2. The parties had stipulated that Goslin "advises that she is *not* a certified nurse midwife licensed by the Commonwealth." (Joint Stipulations, No. 4, R.R. at 71a) (emphasis in original). However, the Board inexplicably excluded this stipulation from its findings of fact.

3. Act of April 4, 1929, P.L. 160, 63 P.S. § 171. Section 1 of the 1929 Law states that it shall be unlawful for any person to practice midwifery before receiving a certificate authorizing such person to do so. 63 P.S. § 171. Section 5 of the 1929 Law states:

"Any person practicing midwifery as a profession, or advertising herself as a midwife, without first obtaining the certificate aforesaid, or lawfully holding a license under the laws of the Commonwealth, shall, upon conviction thereof in a summary proceeding ... be sentenced to pay a fine of not less than ten dollars ($10.00) and costs, nor more than one hundred dollars ($100.00) and costs...."
63 P.S. § 175.

4. Goslin filed an application for stay with this court. By order dated October 31, 2007, this court denied the application with respect to the Board's order to cease and desist from the practice of midwifery but granted the application with respect to the imposition of penalties.

5. This court's scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether the nec-

## I. Practice of Medicine

■ Goslin argues that the Board erred in concluding that Goslin violated sections 10 and 39(b) of the 1985 Act by engaging in the practice of medicine. We agree.

The Board concluded that Goslin violated sections 10 and 39(b) of the 1985 Act by providing "antepartum, intrapartum, postpartum and/or nonsurgically related gynecological care." (Board's Conclusions of Law, No. 3.) However, the Board's regulations define "[m]idwifery practice" as "antepartum, intrapartum, postpartum and nonsurgically related gynecological care." 49 Pa.Code § 18.1. Thus, the Board concluded that Goslin **practiced medicine and surgery** in violation of sections 10 and 39(b) simply **by practicing midwifery.**

Section 10(1) of the 1985 Act provides, in pertinent part, that "[n]o person other than a medical doctor shall ... [p]ractice medicine and surgery."[6] 63 P.S. § 422.10(1). If practicing midwifery is practicing medicine and surgery, as the

essary findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. The phrase "medical doctor" is defined as follows:
   "Medical doctor." An individual who has acquired one of the following licenses to practice medicine and surgery issued by the board:
   (1) License without restriction.
   (2) Interim limited license.
   (3) Graduate license.
   (4) Institutional license.
   (5) Temporary license.
   (6) Extraterritorial license.
Section 2 of the 1985 Act, 63 P.S. § 422.2. The phrase "medicine and surgery" is defined as "the art and science of which the objectives are the cure of diseases and the preservation of the health of man, including the practice of the healing art with or without drugs, except healing by spiritual means or prayer." *Id.* The phrase "healing arts" is defined as the "science and skill of diagnosis and treatment in any manner whatsoever of

Board maintains, then "no person other than a medical doctor shall ... practice [midwifery]." *Id.* However, registered nurses with nurse-midwife licenses may practice midwifery under section 35 of the 1985 Act.[7] Thus, practicing midwifery cannot be construed to be the same as practicing medicine and surgery for purposes of determining whether a person has violated sections 10 and 39(b) of the 1985 Act.

Because the Board found only that Goslin practiced midwifery, the Board failed to establish that she practiced medicine and surgery in violation of sections 10 and 39(b) of the 1985 Act.

## II. Midwifery

■ Goslin next argues that the Board deprived her of due process by failing to provide notice that she was charged with violating section 1 of the 1929 Law for practicing as a midwife without a license and for holding herself out to the public as a midwife.[8] We agree.

disease or any ailment of the human body." *Id.*

7. If section 10 applied to the practice of midwifery, then every registered nurse with a proper nurse-midwife license would be practicing medicine in violation of section 10.

In this regard, we note that, under 49 Pa. Code § 18.6(5), a nurse-midwife may perform "medical services," i.e., services that lie within the scope of the practice of medicine and surgery but "beyond the scope of midwifery," if a collaborating physician delegates the authority to do so and other conditions are met. *See* 63 P.S. § 422.2 (defining "medical service" as an activity that lies within the scope of the practice of medicine and surgery). This regulation makes clear that the practice of medicine and surgery is distinct from, and beyond the scope of, midwifery.

8. The parties stipulated that the Board brought the action against Goslin solely pursuant to the 1985 Act. (*See* Joint Stipulations, No. 1; R.R. at 70a.)

In an administrative proceeding, the essential elements of due process are notice and an opportunity to be heard. *Grossman v. State Board of Psychology,* 825 A.2d 748 (Pa.Cmwlth.), *appeal denied,* 575 Pa. 693, 835 A.2d 710 (2003). The purpose of the notice requirement is to afford the person reasonable notice of the charges against her so that she will have sufficient opportunity to answer the charges. *Woods v. State Civil Service Commission,* 590 Pa. 337, 912 A.2d 803 (2006). For such notice to be adequate, it must at the very least contain a sufficient listing and explanation of charges so that the individual can know against what charges she must defend herself if she can. *Id.*

The Board charged Goslin with violating sections 35 and 39(b) of the 1985 Act by practicing as a nurse-midwife without a nurse-midwife license and by holding herself out to the public as being authorized to engage in practice as a nurse-midwife. Section 35 of the 1985 Act provides:

(a) General rule.—A nurse-midwife license empowers the licensee to practice midwifery in this Commonwealth as provided in this act. The board shall formulate and issue such rules and regulations, from time to time, as may be necessary for the examination, licensing and proper conduct of the practice of midwifery.

(b) Requirements.—No nurse-midwife license will be issued unless the applicant is a registered nurse licensed in this Commonwealth. An applicant for a midwife license must have completed an academic and clinical program of study in midwifery which has been approved by the board or an accrediting body recognized by the board.

63 P.S. § 422.35. Section 39(b) of the 1985 Act provides, in pertinent part, as follows:

(b) Civil penalties.—In addition to any other civil remedy or criminal penalty provided for in this act, the board ... may levy a civil penalty ... on any person who practices medicine and surgery or other areas of practice requiring a license, certificate or registration from the board without being properly licensed, certificated or registered to do so **under this act.**

63 P.S. § 422.39(b) (emphasis added). Section 35 of the 1985 Act clearly governs the Board's issuance of nurse-midwife licenses to licensed registered nurses. Because Section 39(b) of the 1985 Act specifically refers to proper licensing "under this act," section 39(b) authorizes the Board to impose penalties only upon persons who practice as a nurse-midwife without a nurse-midwife license.[9]

Section 1 of the 1929 Law deals with midwifery but has nothing to do with nurse-midwives or nurse-midwife licenses.[10] Section 1 of the 1929 Law states, "it shall be unlawful for any person or persons ... to practice **midwifery** ... before receiving a **certificate** ... authorizing

---

**9.** We note that neither section 35 nor section 39(b) of the 1985 Act permit the Board to impose a civil penalty for holding oneself out as a nurse-midwife. However, under section 38 of the 1985 Act, it shall be unlawful for any person to "attempt to offer to practice" as a nurse-midwife without a valid nurse-midwife license. 63 P.S. § 422.38.

**10.** Indeed, before the 1985 Act, there were no nurse-midwives or nurse-midwife licenses.

We also note that the Board, having concluded that Goslin violated the 1929 Law, cannot now argue that the 1985 Act repealed the 1929 Law. *See* section 1971 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1971 (relating to the implied repeal of a statute). Moreover, if the Board made that argument, and we agreed, then the Board's imposition of penalties for violations of section 1 of the 1929 Law would be null and void.

such person or persons so to do...." 63 P.S. § 171 (emphasis added). A midwife here is "[a]ny person or persons ... who shall attend a woman in childbirth for hire, or who shall make a practice of attending women in childbirth gratuitously or for hire...." Section 6 of the 1929 Law, 63 P.S. § 176 (defining "midwife") (emphasis added). Thus, section 1 of the 1929 Law regulates, by the issuance of **certificates,** persons who are **not** registered nurses with nurse-midwife licenses, but who make a practice of attending women in childbirth gratuitously or for hire.[11]

Given the different purposes of the two statutes, we conclude that the **nurse-midwife charges** against Goslin under the 1985 Act did not give Goslin adequate notice to defend against the **midwife offenses** described in the 1929 Law.[12]

Accordingly, we reverse.

President Judge LEADBETTER dissents as to Part I (practice of medicine) only.

Judge SMITH–RIBNER concurs in result as to Part II (midwifery issue) but dissents to Part I (practice of medicine).

Judge PELLEGRINI concurs in the result only.

### ORDER

AND NOW, this 23rd day of May, 2008, the order of the State Board of Medicine, dated September 26, 2007, is hereby reversed.

### DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent with regard to the majority's decision to reverse the order of the State Board of Medicine finding that Diane Goslin engaged in the unauthorized practice of medicine and violated Section 10 of the Medical Practice Act (Act), Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.10. Goslin defines herself as a "lay midwife" and has no professional nursing or other degree. Section 10 ("Unauthorized practice of medicine and surgery") provides:

No person other than a medical doctor shall engage in any of the following conduct except as authorized or exempted in this act:

(1) Practice medicine or surgery.

(2) Purport to practice medicine and surgery.

(3) Hold forth as authorized to practice medicine and surgery through use of a title, including, but not necessarily limited to, medical doctor, doctor of medicine, doctor of medicine and surgery, doctor of a designated disease, physician, physician of a designated disease, or any abbreviation for the foregoing.

(4) Otherwise hold forth as authorized to practice medicine and surgery.

---

**11.** We recognize that statutes *in pari materia* shall be construed together, if possible, as one statute. Section 1932(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932(b). However, the 1985 Act and the 1929 Law do not relate to the same class of persons. Although both relate to midwifery, the 1985 Act relates to the licensing of registered nurses as nurse-midwives and the 1929 Law relates to the granting of certificates to other persons who attend women in childbirth.

**12.** Moreover, we note that, although the Board concluded that Goslin violated section 1 of the 1929 Law by holding herself out to the public as a midwife, section 1 does **not** make such conduct unlawful. It is section 5 of the 1929 Law that prohibits a person from "advertising herself as a midwife" without a certificate or a license. 63 **P.S.** § 175.

Based on the undisputed facts of record, the Board properly concluded that Goslin practiced medicine and surgery by practicing "a component of the healing art by caring for women during their pregnancy, prior to and through their labor and delivery, and providing care to women and their newborn infants after delivery." Board's Adjudication, p. 13. The Board conceded that the state of pregnancy is not a disease, but it concluded based on its expertise that pregnancy nevertheless carries with it certain inherent risks and complications of diseases and ailments and that the safe management of a woman's pregnancy requires use of diagnostic and treatment skills. It determined that the practice of midwifery[1] is subsumed within the practice of obstetrics and that healthcare practitioners who violate a licensing statute are necessarily in violation of the Medical Practice Act.

Because of its significance to this case, I emphasize the fundamental principle and reasoning articulated by the Board in its final adjudication:

The regulation of the practice of the healing arts is critical to the public health, safety, and welfare. The harm that unlicensed unqualified persons can do to people who they purport to care for is obvious. The entire regulatory scheme pertaining to professional licensing of healthcare practitioners is based on the universally recognized principal that the state has an interest in making sure only qualified individuals provide healthcare because of the inherent risks involved.

[Goslin's] conduct betrays a disregard for the laws of this Commonwealth and a disregard for the welfare of others. [Goslin] possesses no recognizable qualification for providing health care to others. She has no education or training that is recognized in the Commonwealth.... [I]t is well understood in the medical community that pre-natal care, assessment, nutritional counseling and the like are essential for maintaining the health of the mother as well as the child. Regular examinations during the pregnancy can alert the health care provider to potential problems and help avoid potentially catastrophic complications. [Goslin] has no qualifications to provide such care. Accordingly her violations of the law are grave because her conduct puts women and their newborn infants at risk.

Board's Adjudication, pp. 21–22. I turn next to the Board's findings of fact, which

---

1. The term "lay midwife" has no statutory definition, but the Board's regulations promulgated pursuant to the Act defines a "Midwife" as "[a] person licensed by the Board to practice midwifery" and defines "Midwifery practice" as "management of the care of essentially normal women and their normal neonates—initial 28–day period. This includes antepartum, intrapartum, postpartum and nonsurgically related gynecological care." 49 Pa.Code § 18.1. Further, Section 18.5(a) provides that "[a] midwife may not engage in midwifery practice without having entered into a collaborative agreement" with a physician, and Section 18.6 further elaborates in relevant part:

The midwife is authorized and required to do the following:

(1) Engage in midwifery practice as defined in § 18.1....

(2) Maintain a midwife protocol and collaborative agreements....

(3) Prescribe medical, therapeutic and diagnostic measures ... in accordance with the midwife protocol or a collaborative agreement, or both.

(4) Administer specified drugs as provided in collaborative agreements or as directed by a collaborating physician....

(5) Perform medical services in the care of women and newborns that may be beyond the scope of midwifery, if the authority ... is delegated by the collaborating physician in the collaborative agreement....

recite from the parties' Joint Stipulations. The Board describes services that Goslin provides, to Amish and non-Amish pregnant women alike, including actual testing of women and newborns along with gynecological testing as needed:

11. In her capacity as a lay midwife, [Goslin] provides the following services:

a. Pre-natal checkups, including, on occasion, hemoglobin tests;

b. Assistance with labor;

c. Assistance with the delivery of the baby;

d. Postpartum care and pap tests as needed; and

e. Newborn examinations, including weight, measurements, lungs, check for newborn jaundice; PKU test, cord care, nursing history, elimination/void history....

12. As part of her services as a lay midwife, [Goslin] assists with home births; specifically, [Goslin] will:

a. "Coach" the mother through labor;

b. "Catch" the baby if a family member does not want to do so;

c. Tie and cut the cord if a family member does not want to do so; and

d. Contact a doctor in the event that an emergency situation arises in which medical care is required.

Board's Adjudication, p. 4; Reproduced Record, pp. 70a–73a.

The record establishes that Goslin engaged in very specific medical practices and protocols and that she was not licensed to do so as a physician as required by Section 10 of the Act. Although the Board determined that Goslin did not hold herself out as a physician, her conduct and activities in providing care for pregnant women in labor and delivery as well as pre-natal and post-natal care constitute the act of engaging in the unauthorized practice of medicine. As *amicus curiae* Pennsylvania Medical Society (Medical Society) points out in its brief, any person who performs any part of the practice of medicine and surgery does so under three sources of authority, *i.e.*, licensure as a physician, licensure as a non-physician health care professional or by lawful delegation of authority from a physician. *See* Section 10 of the Act; Section 19, 63 P.S. § 422.19; and Section 20, 63 P.S. § 422.20, respectively. Goslin operates under none of these sources.

The Medical Society notes that a definition of medicine and surgery in Section 2 of the Act, 63 P.S. § 422.2, refers to the healing arts as "[t]he science and skill of diagnosis and treatment in any manner whatsoever of disease or any ailment of the human body" and that Goslin's activities fall within the scope of this definition. In short, Goslin determines which pregnancy appears to be normal and which appears to be complicated, and during labor and newborn assessments she makes triage decisions to determine if an emergency exists. The Medical Society opines that these decisions are at the core of the practice of obstetrical medicine.

This case was decided upon Joint Stipulations and exhibits rather than testimony, and arguably a more thorough record could have been made regarding the extent of Goslin's testing and the other activities she performed that involve the practice of medicine. I nevertheless dissent because of the nature of the activities involved and the fact that the Board has expertise in determining what activities constitute the practice of medicine and has an obligation to ensure that those who perform medical procedures are competent, qualified and authorized to do so. At a glance, one can easily discern that Goslin's activities are not so common that they

can be performed by anyone who is not trained or licensed in the health care field.

Goslin performs "hemoglobin tests," which are administered to detect the severity of anemia or polycythemia. Stedman's Medical Dictionary, 26th Edition at 777 defines "hemoglobin" in part as follows: "When Hb [hemoglobin] is exposed to certain chemicals, its normal respiratory function is blocked; *e.g.,* the oxygen in $HbO2$ is easily displaced by carbon monoxide, thereby resulting in the formation of fairly stable carboxyhemoglobin (HBCO), as in asphyxiation resulting from inhalation of exhaust fumes from gasoline engines." Goslin purports to administer these tests, which require skill and knowledge to interpret.

Goslin performs "PKU tests," which require skill to administer and quite obviously to interpret. Stedman's Medical Dictionary at 1371 describes PKU as an "[a]bbreviation for phenylketonuria." That term is defined in part as a "[c]ongenital deficiency of phenylalanine 4–monooxygenase ...; it causes inadequate formation of L-tyrosine, elevation of serum L-phenylalanine, urinary excretion of phenylpyruvbic acid and its metabolites,... which can produce brain damage resulting in severe mental retardation...." Medical literature explains the importance of finding this disease early and how and when the test is performed. Most significantly, Goslin performs "Pap tests" (also referred to as pap smears and commonly known as a medical screening procedure by a medical professional using a speculum inserted in a woman's body to obtain cell samples to be analyzed for detecting infection or other conditions of the body). Stedman's Medical Dictionary at 1629 describes pap smears: "of vaginal or cervical cells obtained for cytological study. Syn Papanicolaou s." Cytology is defined in part as the study of "anatomy, physiology, pathology, and chemistry of the cell." *Id.* at 437. It also defines speculum at 1643. A review of Goslin's other practices and procedures might very well produce the same analysis.

I do not disagree with the sentiment that a woman should have the person she wants to assist in the labor and delivery of her newborn. However, in cases where the individual who performs such services offers them to the public for a fee (or even no fee), then it is up to the Board to protect the mother and her newborn by ensuring that the individual is competent, qualified and licensed to provide the services. It is not up to the pregnant woman to decide that untrained and unlicensed individuals should engage in the unauthorized practice of medicine, even if they are prepared to call a doctor in case of emergency. One must ask what the consequences might be in those cases where the individual cannot detect an emergency due to his/her lack of skill and knowledge. *See, e.g.,* Commonwealth Exhibit 1 (coroner's investigation report) admitted into evidence.

In *Barran v. State Board of Medicine,* 670 A.2d 765, 767–768 (Pa.Cmwlth.1996), the Court deferred to the Board's expertise in denying a license to a doctor, and it stated a principle that is pertinent to the matter at hand:

> The state has the right to regulate and license professionals to protect the public health; and an applicant for licensure bears the burden of proving that he or she meets the qualifications for obtaining a license to practice a profession or occupation....

As the ultimate factfinder, the Board may accept or reject the testimony of any witness in whole or in part, and this Court is bound by the credibility determinations made by the Board....

When reviewing a decision by the Board, this Court may not reweigh the evidence presented or judge the credibility of witnesses. *Kundrat v. State Dental Council and Examining Board,* 67 Pa.Cmwlth. 341, 447 A.2d 355 (1982). Moreover, the Board contains medical doctors and the Secretary of Health pursuant to Section 3 of the MPA, 63 P.S. § 422.3; and it is empowered to make determinations and draw conclusions on factual issues without resorting to additional medical testimony. *Kundrat.* (Citation omitted.)

The Board's expertise is evident in its composition: Commissioner of Professional and Occupational Affairs; Secretary of Health; two members representing public at large; six medical doctors with unrestricted licenses to practice medicine and surgery in the Commonwealth for five years immediately preceding appointment; and one member who shall be a nurse midwife, a physician assistant, a certified registered nurse-practitioner or a respiratory care practitioner licensed or certified under the laws of the Commonwealth. *See* Section 3 of the Act, 63 P.S. § 422.3.

The Board members are appointed by the Governor with the advice and consent of a majority of the Senate, and as gleaned from the Court's reasoning in *Kundrat* it can logically be assumed that the professionals who sit on the Board and heard a case are in fact knowledgeable and experienced in their respective fields and the procedures associated therewith and that they may draw upon their expertise in ruling on the cases before them. That is precisely what the Board did in the case *sub judice.* Drawing upon the members' respective knowledge and experience, as doctors, nurse, nurse midwife and other health care professionals, they determined that Goslin engaged in the unauthorized practice of medicine for which she was not licensed in violation of Section 10 of the Act.

The Board's decision is entitled to deference by the Court unless the Board committed an error of law, made findings not supported by substantial evidence or committed a constitutional violation. *Barran.* Judging by the medical definitions alone of some of the procedures undertaken by Goslin in her birthing practice, it is evident that the Board in its expertise did not commit any errors in determining that Goslin engaged in the unauthorized practice of medicine. I therefore would affirm the Board on this ground.

President Judge LEADBETTER joins in the dissent.